USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: MAY 03 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

SHERMAN ADAMS,

                Petitioner,

      -against-

WILLIAM KEYSER, JR.,
*Superintendent Sullivan Correctional Facility*,

                Respondent.

------------------------------------x

MEMORANDUM DECISION
AND ORDER

16 Civ. 129 (GBD) (AJP)

GEORGE B. DANIELS, United States District Judge:

      Petitioner Sherman Adams, by and through counsel, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his July 9, 2003 conviction in New York Supreme Court of, *inter alia*, two counts of first degree murder, two counts of second degree murder, and one count of second degree attempted murder, as well as his sentence to life without parole. (*See* Pet., ECF No. 1.) From 2001 through 2003, Petitioner was tried three separate times—the juries in his first two trials were unable to reach a verdict—before he was ultimately convicted for shooting and killing two individuals and seriously wounding a third by shooting into their car in the early morning hours of September 13, 1999. (*See* Report and Recommendation (the "Report"), ECF No. 18, at 3.) Petitioner principally claims here that he was deprived the effective assistance of counsel when his trial attorney failed to convey to him a fifteen-year plea offer, which he claims he would have accepted, and because his attorney failed to adequately challenge the State's expert witnesses' testimony relating to gunshot residue ("GSR"). (Pet. at 6–8.) Petitioner also claims that the trial court impermissibly interfered with defense counsel's cross-examination and prevented defense counsel from pursuing legitimate and important lines of inquiry, in violation of Petitioner's due process rights and his right to confront adverse witnesses. (*See id.* at 9.)

Before this Court is Magistrate Judge Andrew J. Peck's August 22, 2016 Report recommending that Adams's habeas petition be denied.[1] (Report at 1.) Magistrate Judge Peck advised the parties that failure to file timely objections to the Report would constitute a waiver of those objections on appeal. (*Id.* at 56–57.) Petitioner filed a timely objection, largely repeating the same general arguments made to Magistrate Judge Peck. (*See generally* Pet.'s Objections to Report and Recommendation ("Obj."), ECF No. 21.)

Having reviewed Magistrate Judge Peck's thorough and well-reasoned Report and the objections made thereto, this Court adopts the Report in full and overrules Petitioner's objections. Accordingly, the petition seeking a writ of habeas corpus is DENIED.

## I. LEGAL STANDARDS

### A. Reports and Recommendations

A court "may accept, reject, or modify, in whole or in part, the findings or recommendations" set forth within a magistrate judge's report. 28 U.S.C. § 636(b)(1)(C). The court must review *de novo* the portions of a magistrate judge's report to which a party properly objects. *Id.* The court, however, need not conduct a *de novo* hearing on the matter. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). Rather, it is sufficient that the court "arrive at its own, independent conclusion" regarding those portions of the Report to which objections were made. *Nelson v. Smith*, 618 F. Supp. 1186, 1189–90 (S.D.N.Y. 1985) (quoting *Hernandez v. Estelle*, 711 F.2d 619, 620 (5th Cir. 1983)).

Portions of a magistrate judge's report to which no or "merely perfunctory" objections are made are reviewed for clear error. *See Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) (citation omitted). In addition, if a party's objection reiterates a prior argument, or consists entirely of conclusory or general arguments, the court should review the Report only for clear error. *See*

---

[1] The relevant procedural and factual background is set forth in greater detail in the Report, and is incorporated herein.

2

*McDonaugh v. Astrue*, 672 F. Supp. 2d 542, 547 (S.D.N.Y. 2009); *DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 339–40 (S.D.N.Y. 2009). Clear error is present when "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (citation omitted).

### B. Antiterrorism and Effective Death Penalty Act

This Court's review of Petitioner's claims is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 *et seq.* Pursuant to AEDPA's "highly deferential" standard of review, *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015), a federal court may not grant a writ of habeas corpus to a state prisoner on a claim that was adjudicated on the merits in state court,

> unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of Section 2254(d)'s first prong, "clearly established Federal law" consists of those legal principles "embodied in a [Supreme Court] holding." *Thaler v. Haynes*, 559 U.S. 43, 47 (2010). "A state court decision is 'contrary to' such clearly established law when the state court either has arrived at a conclusion that is the 'opposite' of the conclusion reached by the Supreme Court on a question of law or has decided a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Washington v. Griffin*, 876 F.3d 395, 403 (2d Cir. 2017) (internal quotation marks and citations omitted). A state court decision involves an unreasonable application of clearly established federal law if it "applied the law in a manner that was 'objectively unreasonable.'" *Moss v. Colvin*, 845 F.3d 516, 520 (2d Cir. 2017) (quoting *Davis*, 135 S. Ct. at 2198). If "fairminded jurists could disagree on the correctness of the states court's decision[,]" the state court's determination is not objectively unreasonable. *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks

3

and citation omitted). Importantly, an *incorrect* application of federal law is not necessarily an *unreasonable* one. *See Grayton v. Ercole*, 691 F.3d 165, 174 (2d Cir. 2012) ("[T]he writ may only issue where the state court's application of the law was not only wrong, but unreasonable.").

The second prong of Section 2254(d) presumes that the state court's factual findings are correct. *See* 28 U.S.C. § 2254(e)(1); *see also Romance v. Bradt*, 391 F. App'x 89, 91 (2d Cir. 2010). Factual determinations by a state court may be held "unreasonable" only where the petitioner rebuts the presumption of correctness "by clear and convincing evidence." *See* 28 U.S.C. § 2254(e)(1); *Davis v. Kelly*, 316 F.3d 125, 127 (2d Cir. 2003). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Indeed, as the Second Circuit has explained, it is not enough that "'reasonable minds reviewing the record might disagree' as to the relevant [factual] finding." *Cardoza v. Rock*, 731 F.3d 169, 178 (2d Cir. 2013) (quoting *Rice v. Collins*, 546 U.S. 333, 341–42 (2006)). Rather, an unreasonable determination of facts has occurred if, for example, the trial court "misapprehended or misstated material aspects of the record in making its finding . . . or where the court ignored highly probative and material evidence." *Cardoza*, 731 F.3d at 178 (citations omitted).

## C. Ineffective Assistance of Counsel

*Strickland v. Washington*, 466 U.S. 668 (1984), sets forth the basic standards for ineffective assistance of counsel claims under the Sixth Amendment. To prevail on such a claim, the petitioner bears the "heavy burden" of demonstrating that his attorney's performance "'fell below an objective standard of reasonableness' based on 'prevailing professional norms'" and "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Eze v. Senkowski*, 321 F.3d 110, 123 (2d Cir. 2003) (quoting *Strickland*, 466 U.S. at 688, 694).

4

*Strickland* "indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Lavayen v. Duncan*, 311 F. App'x 468, 469 (2d Cir. 2009) (internal quotation marks and citation omitted); *see also Burt v. Titlow*, 571 U.S. 12, 17 (2013) ("[C]ounsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[.]") (internal quotation marks and citation omitted). Moreover, a habeas petitioner raising an ineffective assistance of counsel claim "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks and citation omitted). Indeed, "[t]here are countless ways to provide effective assistance in any given case [and] [e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Id.*

When considering a claim for ineffective assistance of counsel under AEDPA, the review is "doubly deferential." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (citation omitted); *see also Harrington*, 562 U.S. at 105 ("The standards created by *Strickland* and [AEDPA] are both highly deferential, and when the two apply in tandem, review is doubly so.") (internal quotation marks and citations omitted). This is so because AEDPA and *Strickland* require federal habeas courts "to afford both the state court *and* the defense attorney the benefit of the doubt." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (emphasis added) (internal quotation marks and citation omitted). The proper inquiry here thus is not whether Petitioner satisfies the *Strickland* test, but whether the state court applied *Strickland* in an objectively reasonable manner. *See Bell v. Cone*, 535 U.S. 685, 698–99 (2002).

### D. Independent and Adequate State Ground Doctrine

It is well established that federal habeas courts may not review a claim rejected by a state court "if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). That maxim

5

applies whether the state-law ground is "a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." *Walker v. Martin*, 562 U.S. 307, 315 (2011). "To be considered an independent and adequate state ground, the state law must be 'firmly established and regularly followed' in the specific circumstances presented in the case.'" *Williams v. Artus*, 691 F. Supp. 2d 515, 524 (S.D.N.Y. 2010) (quoting *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003)).

Like all rules, the independent and adequate state ground doctrine has exceptions. For instance, as courts have recognized, "there are 'exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question.'" *Silva v. Keyser*, 271 F. Supp. 3d 527, 542 (S.D.N.Y. 2017) (quoting *Lee v. Kemna*, 534 U.S. 362, 376 (2002)). To determine whether the application of a state rule is "exorbitant" in a particular case, courts in this Circuit look to three factors:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Cotto*, 331 F.3d at 240.

In addition, a prisoner may still obtain habeas review of a claim barred on state law procedural grounds if he can demonstrate "both good cause for and actual prejudice resulting from his noncompliance with the state's procedural rule."[2] *Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir. 1999). A habeas petitioner may also "bypass the independent and adequate state ground bar by demonstrating . . . that he is actually innocent of the crime for which he was convicted." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002). Finally, courts may review a procedurally defaulted claim if doing so is

---

[2] A court need not consider the prejudice prong if the petitioner fails to demonstrate good cause for his procedural default. *See Brown v. Ercole*, 353 F. App'x 518, 520 (2d Cir 2009).

necessary to avoid a "fundamental miscarriage of justice." *Chrysler v. Guiney*, 14 F. Supp. 3d 418, 434 (S.D.N.Y. 2014) (citation omitted).

## II. PETITIONER'S CLAIMS

Adams's habeas petition asserts three constitutional challenges to his state court conviction. First, he claims that he was denied the effective assistance of counsel because his trial attorney failed to present him with a fifteen-year plea offer allegedly made shortly after Petitioner's second hung-jury mistrial, which Petitioner avers he would have accepted. (Pet. at 6; Mem. in Supp. of Habeas Pet. ("Mem."), ECF No. 3, at 98–111.) Next, he claims that he was denied the effective assistance of counsel because his trial attorney failed to challenge the admissibility of expert testimony relating to GSR or use an expert witness to rebut the State's expert witnesses' testimony, as he had discussed with Petitioner. (Pet. at 8; Mem. at 111–52.) Finally, Petitioner claims that the trial court denied him his constitutional rights to due process and to confront adverse witnesses when it interfered with and precluded defense counsel from cross-examining one of the State's forensic GSR expert witnesses on the reliability of her methods. (Pet. at 9; Mem. at 152–73.)

### A. Counsel's Alleged Failure to Convey A Plea Offer

On June 27, 2006, Petitioner, represented by counsel from the Center for Appellate Litigation, filed a motion to vacate the judgment of conviction pursuant to New York Criminal Procedure Law § 440.10. (Report at 13.) Petitioner's 440.10 motion asserted that his trial counsel was ineffective for failing to convey a fifteen-year plea offer to him, which he claimed he would have accepted. (*Id.*) The same judge who presided over Petitioner's third trial held two hearings on Petitioner's 440.10 motion, during which he heard testimony from Petitioner, Petitioner's two trial counsel, and all three assistant district attorneys who prosecuted Petitioner. (*See id.* at 35.) One of Petitioner's trial counsel was a

7

female attorney who served as a juror on Petitioner's second trial and informally advised Petitioner during his third trial. (*Id.* at 36.)

At the hearing, Petitioner's lead trial counsel testified that he was offered a fifteen-year plea deal from the prosecution "months before" Petitioner's third trial, but that he did not convey the offer to his client until *after* Petitioner had been convicted and sentenced. (*Id.*) Petitioner, however, testified that his lawyer informed him *before* his third trial that a fifteen-year plea offer had been made but rejected by his counsel.[3] (*Id.*) The female attorney testified that Petitioner told her about the fifteen-year plea offer shortly before or during his third trial. (*Id.* at 37.) She further testified that while the jury in the third trial was deliberating, Petitioner asked her if he could still accept the prosecution's fifteen-year offer. (*Id.*) When she asked the prosecutor if the offer was still open, the prosecutor "laughed" at the offer, which he called "ridiculous," and said that he never made or heard about there being such an offer. (*Id.*) All three prosecutors testified at the hearing that a fifteen-year plea offer had never been made and that the only plea offer ever extended to Petitioner's trial counsel involved a prison sentence of twenty-five years to life. (*Id.* at 38.)

After two days of hearings, the court denied Petitioner's 440.10 motion, finding that Petitioner had failed to prove that a plea offer with a fifteen-year sentence had been extended to Petitioner's trial counsel. (*Id.* at 38.) Specifically, the court determined that the defense's witnesses were inconsistent and not credible about the timing and circumstances of the alleged plea offer, while the State's witnesses were consistent and credible that no such offer had ever been made. (*Id.*) The court also found that even if the offer were made and accepted by Petitioner, the guilty plea would have been

---

[3] Petitioner's trial counsel testified at the 440.10 hearing that he did not tell Petitioner about the plea offer because he thought he would reject it; after two trials and two hung juries, he testified, they "smelled victory." (Report at 36.) He further testified that he thought the offer was "silly" because Petitioner "wanted to go home" rather than spend fifteen years in prison. (*Id.*)

8

rejected by the court because Petitioner continued to assert his innocence and deny any role in the crime. (*Id.*)

"A defendant suffers a Sixth Amendment injury where his attorney fails to convey a plea offer because defense counsel have a constitutional duty to give their clients professional advice on the crucial decision of whether to accept a plea offer from the government." *United States v. Brown*, 623 F.3d 104, 112 (2d Cir. 2010) (internal quotation marks and citation omitted). To prevail on such a claim, Petitioner must show that "an offer was made to counsel but not conveyed to [him]. . . . [and] that had he been informed of and counseled regarding the plea offer, [it] would have been presented to the court . . . [and] the court would have accepted its terms." *Windley v. Lee*, No. 11 Civ. 1275 (DLC), 2013 WL 2350431, at *5 (S.D.N.Y. May 16, 2013) (citing *Lafler v. Cooper*, 566 U.S. 156, 164 (2012)). Petitioner has not done so here.

Absent clear and convincing evidence to the contrary, this Court accepts as true the 440.10 court's factual finding that a fifteen-year plea offer had never been made. Moreover, even if such an offer had been made to Petitioner and accepted, there is no evidence in the record to suggest the trial court would have permitted Petitioner to plead guilty by accepting his plea. In fact, the 440.10 court— the same court that presided over Petitioner's third trial—explicitly held that it would not have accepted Petitioner's plea in light of his repeated claims of innocence.[4] Under these circumstances, the court's denial of Petitioner's 440.10 motion was not unreasonable.

---

[4] Petitioner argues that the fact that he maintained his innocence does not defeat his claim since "every petitioner that raises [a failure-to-convey ineffectiveness claim] has pleaded not guilty and gone to trial." (Obj. at 12.) The only case he cites for this proposition is *Pham v. United States*, 317 F.3d 178 (2d Cir. 2003). (*See* Obj. at 12.) The court in *Pham*, however, merely held it reversible error for a court to overlook the disparity in potential sentences and focus only on a profession of innocence in reviewing such a claim. 317 F.3d at 182–83. That is not the case here, as the 440.10 court considered others factors in denying Petitioner's motion, such as the credibility of both sides' witnesses. (*See* Report at 14, 38.) Moreover, *Pham* is distinguishable on its facts; unlike Adams, the petitioner in *Pham* did admit to engaging in certain parts of the alleged criminal conduct. *See* 317 F.3d at 183 ("Pham's petition did not present a blanket claim of innocence.").

9

Petitioner objects to the Report by citing the hearing testimony offered by the female attorney who informally advised him during his third trial, which Plaintiff claims corroborated his claim that the prosecution had offered Petitioner a fifteen-year plea deal after the second trial. (Obj. at 7–9.) Petitioner argues that "neither the [440.10 court] nor the Magistrate-Judge made any effort to reconcile why a licensed attorney would have fabricated—under oath—a claim that a plea offer had been made to [Petitioner]." (*Id.* at 8.) Irrespective of the female attorney's apparent lack of motive to lie, the 440.10 court decided, after hearing the testimony and weighing the relevant evidence, to credit the testimony of the prosecutors and to reject the conflicting and incredible testimony provided by the defense. Moreover, the female attorney only testified that Petitioner—not the prosecution—told her about there being a fifteen-year plea offer, which the prosecutor, when asked, flatly denied ever existed. Presented with no evidence to the contrary, this Court defers to the 440.10 court's credibility assessments and factual findings and concludes that it did not unreasonably apply *Strickland*. *See Cotto*, 331 F.3d at 233 (AEDPA's presumption of correctness is "particularly important when reviewing the trial court's assessment of witness credibility").

### B. Counsel's Alleged Failure to Challenge the Admissibility of the GSR Expert Testimony

GSR evidence featured prominently in Petitioner's case.[5] A forensic analysis of a denim jacket recovered from the crime scene and belonging to Petitioner revealed GSR containing tin particulate, which is not commonly found in GSR. (Report at 4–6.) A significant amount of tin was found in samples from one of the weapons used in the shooting.[6] (*Id.* at 6.) The State relied on this evidence and testimony to identify Petitioner as the shooter. (*See id.* at 6–7, 12.) At trial, defense counsel

---

[5] GSR refers to the substance produced when the primer materials in a bullet vaporize due to the high temperatures from burning gun powder when a weapon is fired. (*See* Report at 5.) GSR can settle on anything within a three to five foot range of the fired weapon. (*Id.*)

[6] Two gunmen shot into the victims' car but the identity of the second shooter was never discovered. (*See* Report at 2.)

10

challenged the qualifications and sought to preclude the testimony of one of the State's forensic experts. (*Id.* at 10.) The court overruled the objection after determining that the objection was more appropriately addressed through cross-examination. (*Id.*) During summation, defense counsel also tried to discredit the GSR evidence and expert testimony by arguing that Adams's jacket had been handled by police with GSR on their hands and therefore had likely been contaminated before laboratory testing took place. (*Id.* at 11.) Nonetheless, Petitioner was convicted of two counts of first degree murder, two counts of second degree murder, one count of second degree attempted murder, and one count each of second and third degree criminal possession of a weapon. (*Id.* at 12.)

On July 16, 2007, still represented by the Center for Appellate Litigation, Petitioner filed a supplemental 440.10 motion, asserting that his trial counsel had been ineffective for failing to adequately challenge the State's GSR evidence and the expert testimony of its forensic analysts. (*Id.* at 14.) After holding a hearing on Petitioner's supplemental 440.10 motion, the court denied Petitioner's claim for relief based on ineffective assistance of counsel. (*Id.* at 15.) Among other things, the court further found that counsel was not ineffective for failing to object to the testimony based on Petitioner's jacket because any possible contamination prior to laboratory testing went to the weight of the evidence, not its admissibility.[7] (*Id.* at 41.)

The 440.10 court also determined that Petitioner's trial counsel had not been ineffective in failing to call or consult with a defense expert to rebut the State's GSR evidence. (*Id.* at 46.) The court found that Petitioner's trial counsel's own testimony established that he had met with a forensic expert to prepare for the trial, had numerous telephone conversations with him, and specifically discussed

---

[7] Petitioner's trial counsel made a motion *in limine* before Petitioner's second trial to preclude the use of Petitioner's jacket because gaps in the chain of custody called its identity and unchanged condition into question. (Report at 41.) The court denied the motion, however, finding that "where an object possesses unique characteristics or markings and is not subject to obvious material alteration, it is of little significance that it passed through several hands." (*Id.* (alterations omitted).)

with him the State's witnesses' forensic reports. (*Id.*) The court also noted that the impeachment material Petitioner's trial counsel likely would have presented through defense expert testimony was elicited on defense counsel's cross-examination of the State's expert witnesses. (*Id.*)

The Report correctly concluded that Petitioner's trial counsel was not ineffective for failing to challenge the State's expert GSR testimony based on the alleged contamination of Petitioner's jacket. (*Id.* at 41–42.) As both the 440.10 court and the Report noted, "the decision not to pursue a meritless motion does not constitute ineffective assistance of counsel." *United States v. Rich*, 83 F. Supp. 3d 424, 430–31 (E.D.N.Y. 2015) (citation and alteration omitted). And as the 440.10 court properly concluded, any alleged defects in the jacket's chain of custody went to the weight of the evidence rather than its admissibility. *See People v. Tirado*, 700 N.Y.S.2d 135, 136 (App Div. 1st Dep't 1999). Accordingly, the 440.10 court did not unreasonably apply *Strickland* in finding that Petitioner's trial counsel was not ineffective for failing to challenge the State's expert witnesses' testimony on this basis.

Nor did trial counsel's failure to call or rely on a defense expert to challenge the State's GSR experts' testimony, as he had discussed with Petitioner, constitute ineffective assistance of counsel. As an initial matter, once a defendant decides to be represented by an attorney and have the lawyer manage and present his case, the power to make decisions and determine trial strategy rests with the attorney, not the client. *See Feliciano v. United States*, No. 01 Civ. 9398 (PKL), 2004 WL 1781005, at *4–5 (S.D.N.Y. Aug. 10, 2004) (citing *Faretta v. California*, 422 U.S. 818, 820–21 (1975)); *see also Elgabrowny v. United States*, No. S5 93 Cr. 181 (MBM), 2003 WL 22416167, at *9 (S.D.N.Y. Oct. 22, 2003) ("[M]ere differences in trial strategy between a defendant and his lawyer do not give rise to a claim of ineffective assistance of counsel.").

In any event, it is well settled that the decision to call witnesses on behalf of a defendant "is a tactical decision of the sort engaged in by defense attorneys in almost every trial" and thus cannot form

the basis of an ineffective assistance of counsel claim, especially where, as here, counsel opted for a strategy that did not involve the use of an expert. *United States v. Smith*, 198 F.3d 377, 386 (2d Cir. 1999) (citation omitted); *see also Swaby v. New York*, 613 F. App'x 48, 50–51 (2d Cir. 2015) ("[T]he failure to seek an expert does not satisfy the performance prong of *Strickland* where counsel chooses a strategy that does not require an expert[.]"). As the Report notes, Petitioner's trial counsel testified at the 440.10 hearing that he did not think he needed to rely on testimony from the expert he had consulted with before trial because "he planned to attack [the State's expert] through cross examination" and he thought the State's expert would be damaged by the lack of his credentials. (Report at 47.) Petitioner's trial counsel also testified at the hearing that the State's second expert was damaged by cross-examination and that she had backed away from some of her conclusions, ostensibly obviating the need for him to rely on a defense expert to testify on Petitioner's behalf. (*See id.*)

Based on Petitioner's trial counsel's testimony, the decision to forego reliance on a defense expert was a strategic choice and thus cannot give rise to ineffective assistance of counsel claim.[8] *See United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997); *see also Hamilton v. Lee*, 94 F. Supp. 3d 460, 479 (E.D.N.Y. 2015) (denying ineffective assistance claim where counsel opted to challenge the prosecution's expert through cross-examination rather than calling an expert, and noting that "in many instances cross-examination will be sufficient to expose defects in an expert's presentation") (citing

---

[8] *Harrington v. Richter* is not to the contrary. (Obj. at 23.) In *Harrington*, as Petitioner correctly notes, the Court held that it was not objectively unreasonable for a defense attorney to decide not to call an expert witness to refute the prosecution's expert because he could have believed it would be harmful to the defense. *See Harrington*, 562 U.S. at 108–09 ("[T]here was the possibility that expert testimony could shift attention to esoteric matters of forensic science, distract the jury[,] . . . or transform the case into a battle of the experts."). Here, at the 440.10 hearing, Petitioner's trial counsel testified that he had some concerns about "shifting the burden of proof" by calling an expert of his own. (Report at 47.) Under these circumstances, counsel was not ineffective for failing to call an expert witness. In addition, Petitioner's claim that his trial counsel failed to consult with an expert or otherwise prepare for the forensic testimony, (Obj. at 20–22), is not supported by the record. (*See* Report at 46 (discussing the pre-trial communications between Petitioner's trial counsel and a forensic expert and the other forms of preparation counsel undertook to become familiar with the relevant forensic science).)

*Harrington*, 562 U.S. at 111). Accordingly, the state court's decision denying Petitioner's 440.10 motion on this basis was not unreasonable.[9]

## C. Alleged Trial Court Interference

Petitioner's final habeas claim is directed at the conduct of the trial court. Petitioner argues that the trial court impermissibly interfered with and curtailed defense counsel's cross-examination of one of the State's expert witnesses in violation of Petitioner's constitutional due process and confrontation rights. (*See* Mem. at 153–67.) Petitioner raised a similar claim on direct appeal to the Appellate Division, but it was rejected as unpreserved. *See Adams*, 983 N.Y.S.2d at 252 ("Defendant failed to preserve his argument that he was deprived of his constitutional rights to due process, to present a defense, and to confront his accusers by various rulings precluding defense counsel from asking certain questions of the forensic examiners on cross-examination."); *see also id.* at 248 ("Defendant's argument that the trial court intervened excessively during the questioning of the People's gunshot residue experts, . . . is not preserved.") (citing N.Y. Crim. Proc. Law § 470.05[2]).

The Report recommends that Petitioner's trial court interference claim be dismissed because the Appellate Division's decision rests on an adequate and independent procedural state ground, namely New York's contemporaneous objection rule.[10] (Report at 51–52.) The Report found that

---

[9] Petitioner objects that the Report failed to address the argument raised in Petitioner's brief that his counsel was ineffective for failing to contest the reliability of the science behind the State's expert witnesses' forensic analyses. (*See* Obj. at 17–19.) As the Report notes, however, Petitioner raised that argument in his direct appeal and the Appellate Division rejected it as unpreserved and, in any event, without merit. (Report at 15–16 (citing *People v. Adams*, 983 N.Y.S.2d 246, 252–53 (App. Div. 1st Dep't 2014).) Since the Appellate Division explicitly invoked a state procedural bar as an independent basis for its decision with respect to this claim, federal habeas review is precluded and the Report's failure to address it is harmless. *See Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990) (citing *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989)). Accordingly, Petitioner's objection is overruled. In addition, in light of the fact that a similar motion *in limine* had been made before Petitioner's second trial and denied on the merits, this Court cannot conclude that the 440.10 court's *Strickland* analysis was unreasonable.

[10] New York's contemporaneous objection rule, codified at Section 470.05[2] of the Criminal Procedure Law, pertinently provides that "New York appellate courts will review only those errors of law that are presented at a

14

Petitioner demonstrated no cause for his procedural default, nor did he make any argument that failing to consider his federal claim would result in a fundamental miscarriage of justice. (*Id.* at 55.) The Report further found Petitioner's argument based on the *Cotto* factors, (discussed *supra* at 6), inapposite. (*See id.* at 52–55.) Petitioner raises only general objections to the Report's analysis of the *Cotto* factors and repeats the same arguments—almost verbatim—that were made to Magistrate Judge Peck. (*Compare* Obj. at 26–29, *with* Mem. at 169–71.)

As the Report correctly noted, the requirement that a defendant preserve his claims by appropriate and timely objection is both firmly established and regularly followed by New York courts. *See Downs*, 657 F.3d at 104; *Gomez v. Brown*, 655 F. Supp. 2d 332, 344 (S.D.N.Y. 2009). The Report also properly concluded that Petitioner has not demonstrated good cause for his default. Nor has Petitioner shown this to be the extraordinary case where failure to hear his claim will result in a fundamental miscarriage of justice. Finally, there is no clear error in the Report's analysis of the *Cotto* factors and its conclusion that the Appellate Division's application of the New York contemporaneous objection rule was an independent and adequate ground for its decision. *See Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009) ("When a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report strictly for clear error."). Accordingly, review of Petitioner's trial court interference claim is procedurally barred.

---

time and in a manner that reasonably prompted a judge to correct them during criminal proceedings." *Downs v. Lape*, 657 F.3d 97, 103 (2d Cir. 2011).

15

### III. CONCLUSION

Magistrate Judge Peck's Report and Recommendation is adopted in full. The petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED.

Since Petitioner has not made a substantial showing of the denial of a federal right, a certificate of appealability will not issue. 28 U.S.C. § 2253; *Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005); *Tankleff v. Senkowski*, 135 F.3d 235, 241 (2d Cir. 1998). Moreover, this Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith. Accordingly, *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to close this case accordingly.

Dated: New York, New York
May 3, 2018

SO ORDERED.

*George B. Daniels*

GEORGE B. DANIELS
United States District Judge